UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| RUBY STOVER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:22-cv-38-RLM |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

Ruby A. Stover seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* The court has jurisdiction over this action pursuant to 42 U.S.C. § 1383(c)(3). The court heard argument on February 6, 2023 and now AFFIRMS the Commissioner's decision.

BACKGROUND

Ms. Stover filed a Title II application for disability benefits on May 26, 2020, for a period of disability beginning May 19, 2020. Ms. Stover's application was denied initially, upon reconsideration, and after a telephonic hearing. Ms. Stover was represented by attorney Kimberly Bellamy at the supplemental hearing (who no longer represents Ms. Stover). Ms. Stover indicated at the hearing that there were still outstanding medical records. During the hearing with the ALJ, Ms. Stover's attorney represented that Dr. Ring wouldn't release

1

the records even after the ALJ offered to hold the record open for 14 days. The ALJ said that Ms. Stover could testify to the information in Dr. Ring's records. The ALJ gave her additional time to submit the records, but whether those records were submitted is unclear.[1]

The ALJ concluded that:

- Ms. Stover hasn't engaged in substantial gainful activity since May 19, 2020, the application date.
- Ms. Stover has these severe impairments: anemia, chronic obstructive pulmonary disease (COPD), degenerative disc disease, rheumatoid arthritis, diabetes, kidney disease, lupus, obesity, depression, and a neurocognitive disorder (20 CFR 404.1520(c)).
- Ms. Stover doesn't have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). Ms. Stover has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with exceptions. Specifically, she can lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday and sit 6

---

[1] Ms. Stover argues that the record is incomplete and that the court should remand on that basis. She says that there are missing medical records from a pain management physician, Dr. Ring, but doesn't state the date or significance of the records. Sentence six of 42 U.S.C. § 405(g) provides that the Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Thus, for a sentence six remand, Ms. Stover must show that her evidence is new and material, and that she had good cause for not providing it sooner. Ms. Stover must also show that the evidence relates to the period before the disability hearing. 20 C.F.R. § 404.970(b). Remand isn't appropriate on this basis because Ms. Stover hasn't shown that the evidence relates back to the period before the disability hearing, and that it is material.

- hours in an 8-hour workday. She is never to climb ladders, ropes or scaffolds, or balance, as defined by the Dictionary of Occupational Titles or work at unprotected heights, but is occasionally able to climb ramps and stairs and stoop, kneel, crouch and crawl. Manipulatively, she can reach overhead occasionally and reach in all other directions frequently. She must avoid concentrated exposure to humidity, dust, odors, fumes and pulmonary irritants. Mentally, she is limited to simple work-related decisions and simple and routine tasks with no assembly line work or strictly enforced daily production quotas.
- Ms. Stover can't perform any past relevant work.
- Considering Ms. Stover's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. The ALJ indicated that he considered the vocational expert's testimony that Ms. Stover would be able to perform the requirements of representative occupations such as a mail clerk, with 45,000 jobs that exist nationally; a counter clerk, with 14,000 jobs that exist nationally; and as a building cleaner, with 65,000 jobs that exist nationally.
- Ms. Stover hasn't been under a disability as defined by the Social Security Act from May 19, 2020, through the date of the decision.

The ALJ concluded that Ms. Stover wasn't disabled within the meaning of the Social Security Act and so wasn't entitled to disability benefits. When the Appeals Council denied her request for review, the ALJ's decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000); Jones v. Astrue, 623 F. 3d 1155, 1160 (7th Cir. 2010). The appeal followed.

STANDARD OF REVIEW

"The Social Security Act, 42 U.S.C. § 405(g), requires the Commissioner's findings to be sustained if supported by substantial evidence." Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). A reviewing court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner. Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434–435 (7th Cir. 2000). Instead, the court must conduct "a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005) (internal quotations omitted). While the ALJ isn't required "to address every piece of evidence or testimony presented, she must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d at 1160.

DISCUSSION

The issue before the court isn't whether Ms. Stover is disabled, but whether substantial evidence supports the ALJ's decision. Cass v. Shalala, 8 F.3d 552, 555 (7th Cir. 1993). If so, the court must affirm the Commissioner's

decision. Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000). Ms. Stover focuses her argument on the different ways that the ALJ improperly considered evidence or failed to consider evidence in assessing her residual functional capacity.

"An ALJ need not address every piece of evidence, but he may not ignore entire swaths of it that point toward a finding of disability." Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010). An ALJ must "provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). An ALJ's decision is valid so long as it "sufficiently articulate[s] their assessment of the evidence to assure [the court] that they considered the important evidence and to enable [the court] to trace the path of their reasoning." Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002).

First, Ms. Stover makes several arguments about how the ALJ's analyses of various medical opinions weren't supported by substantial evidence. She finds issue with the ALJ's analysis of Dr. Mark Carter's opinion, Dr. Victor Rini's opinion, Dr. Joseph Fink's consultation, and the ALJ's reliance on the DDS state agency consultant opinions.

Ms. Stover argues that the ALJ's evaluation of Dr. Mark Carter's opinion wasn't analyzed properly because the ALJ didn't explain why he rejected Dr. Carter's opinion in favor of the other medical opinions. The Commissioner argues that Dr. Carter's opinion doesn't contain functional limitations but only provides conclusory opinions about Ms. Stover's inability to work. Dr. Carter opined that

5

Ms. Stover should be considered permanently disabled and no longer able to work due to her diabetes, degenerative disc disease, metabolic encephalopathy, kidney disease, autoimmune disorder, and spinal stenosis. He also found that Ms. Stover had chronic fatigue and shortness of breath.

The ALJ's review of medical opinions is governed by 20 C.F.R. § 404.1520c, which doesn't require that the ALJ articulate in each determination or decision how he considered all the factors for all the medical opinions and prior administrative medical findings in the case record. Instead, when a medical source provides multiple medical opinions or prior administrative medical findings, the ALJ must articulate how he considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the following factors: 1) supportability; 2) consistency; 3) relationship with the claimant; 4) specialization; and 5) other factors. 20 C.F.R. § 404.1520c(c)(1)-(5).

The ALJ discussed Dr. Carter's opinion, and found specific inconsistencies with the record. Dr. Carter's only opinion about Ms. Stover's symptoms was that Ms. Stover suffered from chronic pain, chronic fatigue, and chronic shortness of breath. Other providers found that her gait and strength were normal and that she had no difficulty performing postural tasks. The ALJ also found that she had limited medical treatment and that she wasn't terminated from her job because of her inability to work is evidence that Ms. Stover isn't as physically impaired as she claims. The ALJ's opinion supported his finding that Dr. Carter's medical

opinion wasn't persuasive because it conflicted with the other medical evidence provided in the record. That's enough under 20 C.F.R. § 404.1520c.

The ALJ's analysis of Dr. Carter's opinion was likely more thorough than it needed to be. Dr. Carter didn't offer any opinions about Ms. Stover's actual functional limitations, so the ALJ didn't err in giving little weight to Dr. Carter's conclusory opinion that Ms. Stover is "permanently disabled" and "no longer able to work" because adjudicatory determination is reserved for the Commissioner, not a physician. 20 C.F.R. §404.1527(d).

Ms. Stover argues that the ALJ improperly assessed Dr. Rini's medical opinion because the ALJ found Dr. Rini's opinion persuasive except for the opinion that Ms. Stover was below average in social functioning. The ALJ explained that he found Dr. Rini's opinion less persuasive in that respect because there was "no evidence of mood issues and she admits she gets along with others and has ongoing friendships." [Doc. No. 9, R. 26]. Ms. Stover argues that this isn't enough to reject the social function evaluation in Dr. Rini's opinion, but the ALJ provided more. The ALJ's opinion also relied on the reasons set forth in discussing the Adult "B" criteria as justification from finding Dr. Rini's opinion regarding social interaction unpersuasive. The ALJ relied on Ms. Stover's self-report that she gets along well with others, spends time with friends, family, and children. The ALJ also pointed to other medical evidence that showed Ms. Stover was described as pleasant and cooperative. This meets the ALJ's obligation to build a logical bridge from the evidence to his RFC and is sufficient reason to find a portion of Dr. Rini's unpersuasive.

Ms. Stover suggests that instead of accepting opinions from Dr. Carter and Dr. Rini, the ALJ improperly relied on the DDS state agency psychological consultants' opinion that Ms. Stover's mental conditions were non-severe. Dr. Carter's letter didn't state any opinions about Ms. Stover's mental conditions; the ALJ didn't err in not accepting an opinion on Ms. Stover's mental condition that doesn't exist. Ms. Stover also misinterprets the ALJ's analysis of her mental condition and reliance on the DDS consultants' opinion. The ALJ found that the DDS state agency consultants' opinion (that Ms. Stover's mental conditions were non-severe) wasn't persuasive given her depression and a cognitive dysfunction. The ALJ then determined that, based on the examination and mental health records, Ms. Stover's mental impairments are severe and limitations are warranted. The ALJ explained that the psychological consultative examination was a more reliable test, because it was done after the alleged onset date and it is more indicative of her current level of functioning, which is why the ALJ gave it considerable weight. The ALJ's opinion then provided detailed analysis of Ms. Stover's mental condition based on third party testimony, medical records, and Ms. Stover's testimony that supported her ability to adapt and manage herself. The ALJ's analysis sufficiently articulated a bridge from evidence to conclusion.

Ms. Stover argues that the ALJ erred in evaluating Dr. Fink's neuropsychological evaluation because there should have been greater limitations than those presented in the opinion. Although the ALJ said that Dr. Fink's evaluation was persuasive, the ALJ also gave reasons why the evaluation should be given less weight – the evaluation was conducted a year before the

8

alleged onset date and there was a question of Ms. Stover's effort and focus throughout the evaluation. Further, Ms. Stover doesn't provide specific limitations that the ALJ failed to consider in Dr. Fink's report. The ALJ's opinion weighed and considered Dr. Fink's neurophysiological evaluation. Ms. Stover disagrees with the way the ALJ interpreted and weighed the report, but reweighing the evidence is forbidden at this stage.

Ms. Stover next argues that the court should remand because the ALJ mischaracterized Ms. Stover's record that that she was of normal strength and that there were no emergency room visits after the alleged onset date, because there was an emergency room visit in February 2020. The alleged onset date is May 2020. It's unclear how the ALJ mischaracterized the record. The ALJ resolved conflicts in the medical evidence with logical reasoning and didn't mischaracterize the record when he determined that there was no evidence of emergency room visits after the alleged onset date.

The next set of Ms. Stover's arguments criticize the ALJ's assessment of Ms. Stover's residual functional capacity as unsupported by substantial evidence. The ALJ determined that Ms. Stover's RFC was "limited to light exertional work with [] postural, manipulative and hazard limitations because of the combination of her impairments and the pain they cause." [Doc. No. 9, R. 27]. The ALJ found that Ms. Stover had significant impairments and addressed Ms. Stover's other impairments that required minimal limitations based on Ms. Stover's testimony, Ms. Stover's infrequent and non-intrusive medical treatment, the DDS state agency medical consultants. Ms. Stover makes several arguments

9

about how the ALJ weighed evidence, but that's not enough to remand. Even if Ms. Stover's interpretations of hospital visits, treatment, and physical abilities are a reasonable reading of the record, under a substantial evidence review, the court doesn't reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the ALJ. Powers v. Apfel, 207 F.3d 431, 434–435 (7th Cir. 2000). Ms. Stover's arguments would require the court to reweigh and reinterpret the evidence.

The only specific symptoms or limitations that Ms. Stover alleges the ALJ didn't properly consider are Ms. Stover's obesity and manipulative abilities. Ms. Stover points to pages of consultative examiner Dr. M. Siddiqui to support the argument that the ALJ didn't consider Ms. Stover's manipulative abilities. But the ALJ cited to Dr. Siddiqui's opinion in support of his analysis, because Dr. Siddiqui said that Ms. Stover has "normal fine finger manipulative exam both hands." [Doc. No. 9, R. 1126]. Dr. Siddiqui's opinion also considered limited range of motion in the left shoulder, which the ALJ considered in his evaluation. The ALJ properly considered Ms. Stover's manipulative abilities.

The ALJ also considered Ms. Stover's obesity. The ALJ evaluated Ms. Stover's obesity and how it affected her ability to move, her range of motion, respiratory impairment, and her joints:

> Upon examination, the claimant was obese weighing 249 pounds on a 5 foot[,] 5 inch frame. Gait was normal and she was able to get on and off the examination table without difficulty. Range of motion was limited to her cervical spine and diminished breath sounds over her right lung base was appreciated. Swelling and tenderness was noted to both knees and ankles[,] and she had limited range of motion to her left shoulder, both hips, knees and ankles. [Doc. No. 9, R. 24].

The ALJ also acknowledged that her high BMI affected other ailments:

> Pulmonary examination showed scattered wheezing and rhonchi. Diffuse arthritic changes and joint pain, as well as back pain was noted. Generalized weakness was noted. Cognition and memory were normal, but mood was depressed. [Doc. No. 9, R. 25].

The ALJ identified Ms. Stover's obesity as an impairment and thoroughly discussed its functionally limiting effects throughout the decision. The ALJ's opinion considered Ms. Stover's obesity in his determination of Ms. Stover's RFC, so remand on this ground is unnecessary.

Ms. Stover makes several arguments about why the ALJ's evaluation of her symptoms weren't supported by substantial evidence. Social Security Ruling 16-3p requires ALJs to "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." SSR 16-3p.

The factors relevant to any ALJ's assessment of symptom testimony are a claimant's daily activities; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication a claimant takes to alleviate symptoms; and treatments received (other than medications) to alleviate symptoms. 20 C.F.R. § 404.1529(c)(3). "[A]n ALJ need not discuss every detail related to every factor . . . ." Gedatus v. Saul, 994 F.3d 893, 903 (7th Cir. 2021). "And the presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence." Id.

"[A] disability claimant's subjective testimony regarding h[is] level of pain does not have to be 'entirely consistent' with the objective medical evidence and

should not necessarily be discounted if it's not . . . ." Carnahan v. Commissioner of Social Security, 2017 WL 5122389 at *7 (N.D. Ind. Nov. 6, 2017). An ALJ follows a two-step process when evaluating Ms. Stover's subjective systems: 1) the ALJ considers whether Ms. Stover's impairment could reasonably be expected to produce the symptoms she alleges, such as pain, and 2) the ALJ considers whether the record supports the symptoms Ms. Stover alleges. 20 C.F.R. §§404.1529(a); 416.929(a). Ms. Stover's arguments about to her subjective symptoms center around her lupus, degenerative disc disease, rheumatoid arthritis, and kidney disease.

If after reviewing a claimant's symptom testimony considering the whole record "an ALJ gives specific reasons supported by the record, [courts] will not overturn his credibility determination unless it is patently wrong. Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying." Curvin v. Colvin, 778 F.3d 645, 651 (7th Cir. 2015) (internal citations omitted).

Ms. Stover argues that the ALJ didn't conduct a proper subjective symptom analysis. The ALJ acknowledged in the opinion that Ms. Stover stated at the hearing that she can't work because her pain level is high, she has cognitive issues causing it difficult for her to focus, and she is forgetful. She claims it is difficult for her to walk. Ms. Stover also complained of back pain affecting her leg causing it to be very hard to walk. Her knees gave out and she has knee spasms. Ms. Stover's argument contests how the ALJ considered her

subjective symptoms but doesn't identify errors that the court could correct without reweighing the evidence.

Ms. Stover also argues that the ALJ used boilerplate language to summarize Ms. Stover's daily activities, and that the ALJ's credibility evaluation of her symptoms therefore lacked support. Ms. Stover also claims that the ALJ didn't articulate why the third-party statements were only somewhat consistent with Ms. Stover's statements. The Commissioner argues that the ALJ sufficiently articulated and supported his analysis of Ms. Stover's substantial complaints, and he considered multiple factors in assessing her complaints, including her statements to medical providers, her hearing testimony, and the third-party statements.

The ALJ decided that while Ms. Stover's symptoms could be the result of her ailments, Ms. Stover's statements that she can't work are inconsistent with the other evidence in the record. The ALJ gave examples in the medical records, and from the Ms. Stover's own testimony that the ALJ used to evaluative Ms. Stover's subjective complaints. The ALJ's credibility determination is supported by the record and so isn't subject to reconsideration. Zurawski v. Halter, 245 F.3d at 887; Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000). A reviewing court doesn't reweigh evidence, so the ALJ's consideration of Ms. Stover's testimony and third-party statements isn't reason to remand.

Ms. Stover next argues that that the ALJ "obscured the record" by stating that Ms. Stover didn't leave her former position due to her ailments, and that the ALJ failed to consider that Ms. Stover had longstanding employment as a loan

13

officer. "An ALJ need not address every piece of evidence, but he may not ignore entire swaths of it that point toward a finding of disability." Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010). The ALJ mentioned that Ms. Stover wasn't terminated because of her physical impairments as part of the justification of finding Dr. Carter's opinion less persuasive. As already discussed, the ALJ didn't need to provide reasoning for rejecting Dr. Carter's opinion because it didn't articulate specific limitations. The ALJ relied on other evidence – medical records and testimony – that supported his conclusion that Ms. Stover wasn't as physically limited as she claimed. Ms. Stover's work history is insufficient to negate the other substantial evidence supporting the ALJ's conclusions and credibility determinations.

    Lastly, Ms. Stover criticizes the ALJ's opinion because it references Ms. Stover's sparse and conservative treatment, and that conclusion is "unsupported and a distortion." [Doc. No. 16, p. 21]. This court can't substitute its judgment for the ALJ's judgment. Gotts v. Kijakazi, 27 F.4th 1273, 1278 (7th Cir. Mar. 7, 2022). So long as an ALJ's conclusions were "reasoned and supported by substantial evidence", the court must affirm. Id. The ALJ provided support for this conclusion when he explained that the last time the claimant was treated for physical impairment was in September and October 2020, and that there were no emergency room visits after the alleged onset date. This evidence provides a logical bridge to determine that Ms. Stover's treatment was sparse and conservative.

CONCLUSION

The court AFFIRMS the ALJ's opinion because substantial evidence in the record supports the RFC determinations and the ALJ provided good explanation for giving less weight to certain medical expert reports in support of his RFC determination and limitations.

SO ORDERED.

ENTERED: March 1, 2023

/s/ Robert L. Miller, Jr.
Judge, United States District Court